UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES DAVIS,

        Plaintiff,

    v.

ICICLE SEAFOODS, INC., in personam; the P/B ARCTIC STAR, Official Number 501203, her engines, machinery, appurtenances and cargo, in rem,

        Defendants.

CASE NO. C07-1565BHS

AMENDED DECISION AND ORDER INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court on a bench trial conducted on December 15, 2008. Dkt. 47. The Court recessed the trial for the single purpose of allowing Plaintiff's deposition to be taken in lieu of appearance at trial with the concurrence of Defendants. The transcript was to be submitted on or before December 19, 2008. Plaintiff's deposition was taken on December 17, 2008 and the deposition was timely submitted to the Court. The Court has considered the testimony and arguments at trial; exhibits and deposition testimony admitted into evidence, including Plaintiff's depositions of Ted M. Zollman, M.D., and Ray Robinson, M.D.; the parties' briefing; the remainder of the file; and the oral arguments of the parties, and hereby finds for Plaintiff in the amount of $1,794.00 for the reasons stated herein.

## I. SUMMARY OF THE CASE

This is an action by a seaman for personal injuries, wages, and claim for maintenance and cure arising out of an accident at sea aboard the P/B ARCTIC STAR occurring on or about July 27, 2007 in waters off the Alaska coast.

AMENDED DECISION AND ORDER - 1

## II. JURISDICTION

The Court has jurisdiction over the parties and has subject matter jurisdiction by virtue of 28 U.S.C. § 1333, the Jones Act (46 U.S.C. § 30104).

## III. FINDINGS OF FACT

Based upon the testimony at trial and the admitted depositions and exhibits, the Court makes the following findings of fact:

1. Plaintiff Charles Davis took employment with Icicle Seafoods commencing July 9, 2007. The terms of the written employment contract, dated July 10, 2007, between Icicle Seafoods and Plaintiff ("Employment Contract") included a provision whereby the parties agreed that Icicle Seafoods had the right to transfer Plaintiff from one work location to another to meet its needs.

2. The Employment Contract also provided that if Plaintiff was entitled to maintenance, it would be paid at the rate of $20 per day. Plaintiff makes no claim for maintenance beyond the rate of $20 per day.

3. Plaintiff traveled to Alaska to join the Icicle-owned processing barge BERING STAR on approximately July 10, 2007. On approximately July 17, 2007, he was transferred to Icicle's processing barge ARCTIC STAR.

4. On or about July 27, 2007, Plaintiff reported to Gordon Cornelius, ARCTIC STAR Safety Manager, that he suffered an injury to his left eye while painting an overhead pipe when dust or some other foreign matter fell into his eye. Plaintiff was not wearing eye protection at the time.

5. Mr. Cornelius attempted to treat Plaintiff's eye condition with antibiotics from a period beginning on July 28, 2007 and running through August 1, 2007, specifically seeing Plaintiff on July 28, twice on July 29, twice on July 30, twice on July 31, and once on August 1, 2007.

6. Throughout this period of time when Mr. Cornelius treated Plaintiff for his eye condition, Mr. Cornelius consulted with Dr. Zimmerman, a physician available by phone to him,

AMENDED DECISION AND ORDER - 2

1 pursuant to a contract between Dr. Zimmerman and Icicle Seafoods whereby Dr. Zimmerman provided medical advice for purposes of remote triage of medical conditions.

7. On August 1, 2007, Mr. Cornelius sent an email to Chris Kline, an employee in the Seattle office of Icicle Seafoods, summarizing his treatment and handling of Plaintiff's eye condition. Thereafter, based on input from Dr. Zimmerman, Mr. Kline directed Mr. Cornelius to arrange to have Plaintiff flown by float plane, at Icicle Seafoods' expense, to Seward, Alaska, where he could be received by employees of the Icicle Seafoods processing plant at that location, and taken for treatment to the Seward Providence Hospital Emergency Room ("Providence").

8. It was the intention of all involved that Plaintiff would be seen at Providence by medical professionals for clearance to travel to Anchorage and ultimately to Seattle for follow-up medical treatment. However, physicians at Providence rendered a diagnosis of a hordoleum of the left eye (sty), and returned Plaintiff to work with restrictions only for wearing protective eyewear or sunglasses, and use of hot compresses on his left eye for 20 minutes at a time over the course of five days.

9. Pursuant to the Employment Contract, Icicle Seafoods had the right to ask Plaintiff at that time to return to work, either at the processing barge ARCTIC STAR, or at its Seward plant. However, Plaintiff did not feel comfortable returning to work without having his eye examined by a physician who specialized in the diagnosis and treatment of eyes.

10. The Employment Contract also provided Defendants, pursuant to paragraphs 1 and 8, the right to terminate the contract for several enumerated reasons or for no reason. Had Plaintiff continued work, it would have ceased when there was no further available work on August 26, 2007.

11. The Employment Contract also provided in paragraphs 7 and 8 that Defendants would not be liable for transportation of Plaintiff back to Seattle if Plaintiff was deemed to have voluntarily resigned. Transportation to Seattle for Plaintiff was arranged and paid for by Defendants.

AMENDED DECISION AND ORDER - 3

12. It was reasonable for Defendants to regard Plaintiff as having voluntarily forfeited his job when he elected to go to Seattle for additional health care. It was also reasonable for Plaintiff to believe that Defendants were in accord with his decision to seek additional medical attention in Seattle and that this was not a unilateral decision or voluntary forfeiture of his right to receive unearned wages and maintenance and cure. Therefore, it was reasonable for Plaintiff to expect to continue to receive unearned wages and maintenance and cure while he was obtaining a further evaluation and treatment of his left eye.

13. Upon returning to Seattle, Plaintiff obtained an examination at the Swedish Hospital Emergency Room ("Swedish") where he was seen and treated by Robert R. Grundy, M.D. Dr. Grundy referred him to an ophthalmologist, Grady Hughes, M.D. Plaintiff thereafter followed up with Dr. Hughes on August 7, August 10, and August 15, 2007. At no time during his consultation at Swedish on August 4, or thereafter during his three consultations with Dr. Hughes, was the diagnosis for Bell's Palsy rendered. During this period of time, the only treatment rendered was the same treatment offered at Providence. None of the health providers in Seattle released Plaintiff to return to work, whether on full or light duty.

14. On August 24, 2007, Plaintiff was seen by ophthalmologist Ted Zollman, M.D., a partner of Dr. Hughes. At that time, Dr. Zollman diagnosed Bell's Palsy.

15. Plaintiff reached maximum medical improvement regarding his eye hordeolum on October 11, 2007. There is no persuasive evidence that the condition of Bell's Palsy was caused by the injury Plaintiff sustained to his left eye.

16. Plaintiff may have been suffering from the diagnosed hordeolum before the foreign matter fell into his eye on or about July 27, 2007, but there is insufficient evidence to support a finding that there was, in fact, a pre-existing condition.

17. Defendants did not have a duty under OSHA or at common law to insure that Plaintiff wear eye protection on the painting job during which the foreign matter fell into Plaintiff's eye. Defendants did comply with the OSHA regulation at 29 C.F.R. § 1910.132 by making an assessment of hazards and had determined that painting pipes was not the kind of

AMENDED DECISION AND ORDER - 4

hazardous work that warranted the wearing of eye protection. Likewise, Plaintiff was not under any duty to wear such eye protection while painting the pipes.

18. Icicle Seafoods has paid all medical bills incurred by Plaintiff for all treatment received from Providence, Swedish, Dr. Grundy, Dr. Hughes, and Dr. Zollman up to the date of maximum medical improvement, declared by Dr. Zollman to be October 11, 2007. Icicle Seafoods has not paid medical bills for treatment related to the Bell's Palsy, all of which were incurred by Plaintiff beyond the date of October 11, 2007.

19. Defendants had the duty to pay maintenance from July 30, 2007 to the date of his maximum medical improvement. To date Defendants have only paid Plaintiff the amount of $280.00 for maintenance.

## IV. CONCLUSIONS OF LAW

1. Defendants are not liable to Plaintiff under the Jones Act for negligence or unseaworthiness.

2. At all times and matters relevant to the injury sustained by Plaintiff, Defendants were in compliance with OSHA standards.

3. Defendants are liable for unearned wages and maintenance and cure from the date of the injury to Plaintiff's eye, on or about July 27, 2007, until he received maximum medical improvement on October 11, 2007.

4. Defendants are liable for all medical bills related to Plaintiff's hordeolum that were incurred from July 29, 2007 to October 11, 2007. Defendants have paid all hordeolum-related medical expenses.

5. Defendants are liable for Plaintiff's maintenance from July 30, 2007 until October 11, 2007. Defendants paid Plaintiff maintenance of $20 per day from August 27, 2007 to September 9, 2007. Plaintiff shall be awarded maintenance of $20 per day for the periods of July 30, 2007 to August 26, 2007 and September 10, 2007 to October 11, 2007, which is $1180.00.

AMENDED DECISION AND ORDER - 5

6. Defendants are liable for unearned wages due Plaintiff for the period of July 29, 2007 until the end of the ARCTIC STAR's voyage. *Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996). Plaintiff could have worked through August 26, 2007 and earned $1,299.36, which represents $1,614.11 in gross wages less tax withholding of $314.75. Plaintiff shall be awarded $1,299.36 in unearned wages.

7. Defendants are entitled to an offset of $685.36 for the amount that Plaintiff received as Alaska Worker's Compensation for the period of July 30, 2007 through August 26, 2007.

8. Plaintiff has failed to show that Defendants acted arbitrarily or capriciously by concluding that Plaintiff's decision to go to Seattle for additional health care constituted a forfeiture of his position. Therefore, Defendants are not liable for Plaintiff's attorney's fee necessary to recover unpaid maintenance and wages.

9. Similarly, Defendants are not liable for the cost of the deposition of Dr. Zollman because Plaintiff has failed to show that they acted arbitrarily or capriciously. Moreover, Dr. Zollman's deposition was unnecessary in this action because Defendants conceded that Plaintiff reached maximum possible cure on October 11, 2007.

## V. ORDER

Therefore, it is hereby

**ORDERED** that, consistent with the findings of fact and conclusions of law stated herein, the Clerk of Court shall enter judgment in favor of Plaintiff in the amount of $1,794.00

DATED this 2ndd day of March, 2009.

BENJAMIN H. SETTLE
United States District Judge

AMENDED DECISION AND ORDER - 6